IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-00083-NYW

HI-POINT HOME BUILDERS, LLC,

    Plaintiff,

v.

JOHN PAUL LUMAN, and
NICOLE L. LUMAN,

    Defendants.

## ORDER OF REMAND

This matter is before the Court on Defendants' Response to Show Cause Order Dated January 11, 2023. [Doc. 12]. For the reasons that follow, the Court concludes that Defendants John Paul Luman and Nicole L. Luman ("Defendants" or "the Lumans") had not met their burden of establishing the Court's subject matter jurisdiction over this case. Accordingly, this case is hereby **REMANDED** to the District Court of El Paso County, Colorado.

## BACKGROUND

Plaintiff Hi-Point Home Builders, LLC ("Plaintiff" or "Hi-Point") initiated this civil action on November 22, 2022 in the District Court of El Paso County, Colorado, raising one claim of breach of contract under Colorado common law. *See* [Doc. 5 at 1, ¶¶ 35–42]. Hi-Point alleges that on or about June 23, 2021, it entered into a contract with the Lumans for the construction of a single-family residence. [*Id.* at ¶ 5]. According to Plaintiff, Defendants have refused to close on the residence and are in breach of the Parties' contract. [*Id.* at ¶¶ 38–39]. More specifically, and

relevant here, Plaintiff claims that Defendants breached the contract by, *inter alia*, "sending a Notice to Terminate [the contract] . . . erroneously claiming the Residence had failed to appraise and, therefore, [they] were terminating." [*Id.* at ¶ 22].

On January 10, 2023, Defendants removed this case to federal court. [Doc. 1]. In their Notice of Removal, the Lumans stated that "[t]his case involves a loan that was guaranteed by the [United States Department of Veterans Affairs ("VA")]," and "[t]hus, the State Court Action can be removed to this Court because it raises a federal question." [*Id.* at ¶ 4]. Defendants did not cite any legal authority in support of their position. *See* [*id.*]. Concluding that the Notice of Removal was insufficient to establish federal question jurisdiction in this case, this Court issued an Order to Show Cause on January 11, 2023, directing Defendants to show cause why this case should not be remanded to state court for lack of subject matter jurisdiction. [Doc. 8]. Defendants responded on January 23, 2023. [Doc. 12].

## LEGAL STANDARDS

A district court has an independent obligation to satisfy itself of its own jurisdiction. *See City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). Accordingly, a court "may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)). A court should not proceed in a case unless it has first assured itself that jurisdiction exists. *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005).

Removal of a civil action from state court to federal court is proper if the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). Defendants contend that this Court has

original federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, which provides that federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"For statutory purposes, a case can 'arise under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (alteration marks omitted). But even where a claim is based in state claim, the Supreme Court "ha[s] identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Id.* at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Specifically, state law claims that raise a substantial question of federal law may be sufficient to establish federal question jurisdiction. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "To invoke this so-called 'substantial question' branch of federal question jurisdiction," the party invoking a federal court's jurisdiction must establish that "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 947 (10th Cir. 2014) (quoting *Gunn*, 568 U.S. at 258).

This "substantial question" branch of cases has "narrow boundaries." *Id.*; *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) ("[T]his branch of arising-under jurisdiction is a slim one."). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Becker*, 770 F.3d at 947. Further, the presence of a federal defense, even if the only question truly at issue in the case, is insufficient to establish federal question jurisdiction. *Id.* And finally, "if a claim does not present 'a nearly pure issue of

3

law, one that could be settled once and for all and thereafter would govern numerous cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction will generally be inappropriate." *Id.* at 947–48 (quoting *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 700–01) (ellipses omitted).  Because federal courts are ones of limited jurisdiction, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).[1]  "[A]ll doubts are resolved in favor of remand."  *Cellport Sys. v. Peiker Acustic GmbH & Co. KG*, 335 F. Supp. 2d 1131, 1133 (D. Colo. 2004).

## ANALYSIS

In their Response to the Order to Show Cause, Defendants argue that "[w]hile the Complaint does not present a federal question, federal subject matter jurisdiction is nevertheless appropriate because the Complaint implicates federal law as part of its affirmative case against Defendants."  [Doc. 12 at 7].  They contend that this case involves a substantial and disputed issue of federal law, arguing that the resolution of Plaintiff's claim turns on "the interpretation of [a]

---

[1] Since *Dart Cherokee*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not passed on the question of presumption against removal jurisdiction.  However, other federal courts have continued to recognize the presumption in questions of removal outside the specific context of the Class Action Fairness Act.  *See, e.g.*, *Shah v. Meier Enters., Inc.*, 855 F. App'x 384, 386 (9th Cir. 2021) (in the context of diversity jurisdiction, affirming that the district court "properly recognized that there is a presumption against removal and that the defendant always has the burden of establishing that removal is proper"); *Burger v. Colo. Nat'l Bancorp*, No. 17-cv-01964-MEH, 2017 WL 4586109, at *2 (D. Colo. Oct. 16, 2017) ("Where there exist uncertainties regarding the Court's jurisdiction, the uncertainties are resolved in favor of remand."); *Johnson v. Labs, Inc.*, No. 16-cv-00718-MEH, 2016 WL 9735765, at *3 (D. Colo. Sept. 8, 2016) (same); *Gallup Med Flight, LLC v. Builders Tr. of N.M.*, 240 F. Supp. 3d 1161, 1211 (D.N.M. 2017) (same).  In any event, the Court would reach the same conclusion regardless of whether or not a presumption against removal applies.

federal statute and regulations governing loans guaranteed by the VA." [*Id.* at 6]. To fully understand Defendants' position, additional background context is helpful.

Plaintiff alleges in the Complaint that Defendants breached the contract when they attempted to terminate the contract after the appraisal of the residence. [Doc. 5 at ¶ 22]. According to Plaintiff, the purchase price of the residence, at closing, was $1,098.996.00, which was allegedly calculated after taking into consideration certain credits or change orders effectuated during construction. [*Id.* at ¶ 12]. Plaintiff further alleges that the home was appraised at $1,100,100.00, "approximately $1000.00 above the purchase price for the Residence." [*Id.* at ¶ 21]. Plaintiff alleges that, after the appraisal, Defendants improperly attempted to terminate the contract by "erroneously claiming the Residence had failed to appraise and, therefore, [they] were terminating." [*Id.* at ¶ 22].

As represented in the Notice of Removal, it is Defendants' position that they "properly terminated the contract to purchase the Residence [because] the appraised value of the Residence, as determined by a VA-approved lender, did not exceed the purchase price in violation of the VA . . . home loan program requirements." [Doc. 12 at ¶ 10]; *see also* [*id.* at ¶ 20 ("The basis of Defendants' termination was that the appraised valuation of the Residence did not satisfy the conditions of the VA home loan program.")]. In support, Defendants direct the Court to 38 U.S.C. § 3710, which provides that a loan will not be guaranteed by the VA "unless . . . the loan to be paid to the veteran for such property or for the cost of construction, repairs, or alterations, does not exceed the reasonable value thereof as determined [by an appraisal]." 38 U.S.C. § 3710(b)(5). Defendants represent that "[t]he principal loan amount to be financed by Defendants [for the residence] was $1,105.392.00," but "[a]fter the appraisal report was issued, Defendants' lender

5

refused to fund the loan because 'value or type of collateral [was] not sufficient.'" [Doc. 12 at ¶ 17]. Defendants state that they "elected to terminate the contract pursuant to Defendant John Luman's express right to do so as a VA-buyer under Section 9.3 of [the Parties'] contract." [*Id.* at ¶ 20]. Section 9.3 of the contract states, *inter alia*, that "[i]f the Buyer is to pay the Purchase Price by obtaining a new VA-guaranteed loan, it is agreed that, . . . Buyer shall not . . . be obligated to complete the purchase of the Property described herein, if the Purchase Price exceeds the reasonable value of the Property established by the [appraisal]." [Doc. 12-1 at 19].

Defendants argue that federal question jurisdiction exists in this case because "the appraisal was mandated by the laws and regulations governing the VA home loan program, and Defendants' right to terminate the contract for failure to appraise above the 'cost of construction' is founded in the VA regulations." [Doc. 12 at 9]. They argue that "the VA regulations prohibit the financing of a VA-guaranteed loan if the 'reasonable value' of the home . . . is less than the costs of construction for the home," and thus, "the parties' legal duties turn almost entirely on the proper interpretation of that regulation and whether the 'purchase price' as defined by the contract and by Plaintiff conforms with the 'cost of construction' as used in the VA regulations." [*Id.* at 10 (quotation omitted)]. According to Defendants, "[a]djudicating Plaintiff's breach of contract claim . . . requires this Court to determine, at a minimum, the meaning of 'cost of construction' for the purposes of 28 U.S.C. § 3710(b)(5)." [*Id.*].

The Court respectfully disagrees that this case turns on the interpretation of federal law or that a federal question is "necessarily raise[d]" in the Complaint. *Grable*, 545 U.S. at 314. A federal question is "necessarily raised" only if it is a "necessary element of one of the well-pleaded state claims" or whether it is "'really' one of federal law." *Franchise Tax Bd. of State of Cal. v.*

*Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983).  This is not the case here.  The Court notes that Defendants' Response focuses extensively on the federal regulatory scheme and its requirements in general, as well as Defendants' own position that they were permitted to terminate the contract under applicable federal regulations or statutes.  *See, e.g.*, [Doc. 12 at 7–8, 9–11].  The Response noticeably lacks, however, any connection between Plaintiff's claim for breach of contract and any identifiable federal question; indeed, Plaintiff does not invoke federal rules or regulations in the Complaint, and instead bases its claim solely on the contract itself and the alleged conduct of the Parties.

This case plainly appears to be a straightforward contract dispute, turning on whether the appraisal was at or above the "Purchase Price" as defined in the contract—as Plaintiff suggests, rendering the attempted termination in breach—or whether the "Purchase Price," as defined in the contract, exceeds the appraisal value of the residence—as Defendants suggest, rendering their termination within the contract's parameters.  Defendants attempt to couch the dispute as an issue of federal statutory or regulatory interpretation, apparently concluding that the term "Purchase Price" used in the contract is interchangeable with the phrase "cost of construction" contained in the § 3710(b)(5), and further equating the statutory requirements of the VA loan program with the Parties' legal obligations under the contract.  *See, e.g.*, [Doc. 12 at 10 ("Defendants . . . take the position that the 'purchase price' or 'cost of construction' must be the total amount paid for the construction of the Residence."); *id.* ("[T]he source of Defendants' right to terminate is located within the federal laws and regulations governing the VA home loan program. . . . Thus, the parties' legal duties turn almost entirely on the proper interpretation of that regulation.")].  And thus, Defendants insist, this Court must "determine . . . the meaning of 'cost of construction'" under the

7

statute to resolve the breach of contract claim. [*Id.*]. But neither the Complaint nor the contract make this same connection, and the Court is not persuaded that any federal issue identified by Defendants is "necessarily raised" in the breach of contract claim (or, for that matter, is essential to the Parties' dispute). *Becker*, 770 F.3d at 947.[2]

Second, even assuming that Defendants are correct they have a "right to terminate the contract for failure to appraise above the 'cost of construction' . . . founded by the VA regulations," [Doc. 12 at 9], this would provide, at best, a defense to Plaintiff's breach of contract claim. Federal questions that "may turn out to be barriers to the contract's effectuation . . . [are] not a sufficient basis from which to conclude that the questions are 'necessarily raised.'" *Becker*, 770 F.3d at 948 (alteration marks changed). As Defendants themselves concede, [Doc. 12 at 7 n.2], federal question jurisdiction cannot depend solely on a federal defense. *Becker*, 770 F.3d at 947; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Defendants' assertion that they permissibly terminated the contract under federal law is not a sufficient basis to establish subject matter jurisdiction.

Defendants' other asserted bases of federal question jurisdiction—that "Defendants' loan was guaranteed by the VA," that "Plaintiff's Complaint suggests [Plaintiff] and its sale contract

---

[2] The case that Defendants rely on in support of their argument, *Davis v. GMAC Mortgage LLC*, No. 4:11-cv-95 CDL, 2012 WL 860389 (M.D. Ga. Mar. 13, 2012), is distinguishable. In *Davis*, the plaintiffs alleged that the defendant breached their refinance loan by charging fees that were prohibited under the applicable VA regulations, which had been expressly incorporated into the parties' contract. *Id.* at *1. Notably, in *Davis*, the plaintiffs had conceded that "resolution of an issue of federal law is essential to [their] state law breach of contract claim." *Id.* at *3. The court concluded that the federal issue was disputed and substantial, as the resolution of the breach of contract claims "depend[ed] primarily on a legal interpretation of the meaning of a federal regulation rather than the simple application of that federal regulation to disputed facts." *Id.* at *4. Here, despite Defendants' arguments, the Court cannot conclude that the Parties' dispute turns on the interpretation of a federal regulation.

complied with all regulations applicable to builders as part of the VA home loan program," [Doc. 12 at 7 n.2], or that "the appraisal was mandated by the laws and regulations governing the VA home loan program," [*id.* at 9], similarly do not establish federal question jurisdiction here. "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). And the fact that some federal regulations may have governed the Parties' conduct in their business dealings does not in itself establish a disputed federal question in this case. *See Morris v. Deutsche Bank Nat. Tr. Co.*, No. 2:14-cv-1353 LKK CKD, 2014 WL 3421006, at *2 (E.D. Cal. July 14, 2014), *report and recommendation adopted*, 2014 WL 4748124 (E.D. Cal. Sept. 23, 2014) ("The mere fact that the loan modification in question arose out of a federal program and may implicate federal regulations is insufficient to reach the level of substantiality to support the exercise of federal jurisdiction."); *Wyatt v. Sussex Surry, LLC*, 482 F. Supp. 2d 740, 745 (E.D. Va. 2007) (rejecting argument that federal question jurisdiction arose of state law nuisance, negligence, and trespass claims because these claims "necessarily implicate[d] the question of whether [the defendant] complied with" federal regulations); *cf. Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (the fact that the FDA regulated medical devices at issue in state law tort claims was insufficient to give rise to federal question jurisdiction). Furthermore, while Defendants posit that resolution of Plaintiff's claim "requires this Court to determine . . . whether the appraisal was properly conducted in compliance with the requirements of" federal law, [Doc. 12 at 10–11], there are no allegations in the Complaint challenging the adequacy of the appraisal, and Defendants do not otherwise explain why the adequacy of the appraisal is at issue in this case—let alone that this is an essential federal question that must be resolved.

Finally, the Court notes that Defendants' termination of the contract is but one basis for Plaintiff's breach of contract claim; Plaintiff also alleges that Defendants "breached the contract by," *inter alia*, "engaging in bad faith conduct by attempting to manufacture breaches and . . . negatively influence the appraiser." [Doc. 5 at ¶ 28]. In other words, Plaintiff's claim is based on additional, independent theories of liability outside of Plaintiffs' alleged attempted contract termination. "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012); *see also Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1267 (10th Cir. 2022) (affirming remand to state court where the plaintiffs could "prevail on their claims without proving any issue of federal law"). Moreover, and importantly, such an allegation suggests that this case "does not present a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases, but rather is fact-bound and situation-specific." *Becker*, 770 F.3d at 947. In this circumstance, "federal question jurisdiction [is] generally . . . inappropriate." *Id.*

The Court must exercise "prudence and restraint" in conducting the substantial-question analysis. *Merrell Dow*, 478 U.S. at 810. Defendants have not demonstrated that a federal question is an essential element of Plaintiff's claim, let alone a substantial one. This case is not within the "special and small category of cases" in which a federal court may exercise jurisdiction over a state-law claim. *Gunn*, 568 U.S. at 258. Accordingly, the Court must remand this case to state court for lack of federal subject matter jurisdiction.

**CONCLUSION**

For the reasons set forth herein, it is **ORDERED** that:

(1) The Order to Show Cause [Doc. 8] is **MADE ABSOLUTE**;

(2) This case is **REMANDED** to the District Court of El Paso County, Colorado, where it was originally filed; and

(3) The Clerk of Court is directed to **CLOSE** this case.


DATED: January 27, 2023              BY THE COURT:

_____
Nina Y. Wang
United States District Judge